## No. 11,165.

### LOUISIANA LAND AND FISHERIES COMPANY, LIMITED, VS. MARCELLUS GASQUET ET ALS.

In an action for trespass under the general denial, defendant can show that the plaintiff was not the owner and not the possessor of the property.

Possession alone will support the action, but where property is owned by the State which it has declared it holds for the common benefit of all its citizens, one citizen can not obtain possession so as to exclude another, except under regulations prescribed by the State.

Act 110 of 1892 prohibits the sale by the register of the land office of natural oyster beds in the bays, lakes, bayous, inlets, coves, bordering on the Gulf of Mexico, and all that part of the Gulf of Mexico within the jurisdiction of the State. No one can acquire title therefore from the State of natural oyster beds located in any of the above described waters.

APPEAL from the Twenty-second District Court, parish of Plaquemines. *Livaudais, J.*

---

*Leovy & Blair* and *James Wilkinson* for Plaintiffs and Appellees:

1. Oysters, "when taken from their natural beds by the industry of man and reduced to possession, unquestionably belong to the captor, and are protected alike by criminal as well as civil law." State vs. Casselar (not reported), No. 9468; 14 Wendell, p. 42; 4 Barb. 592; 27 N. J. Eq. 389.

2. Even when planted on public lands they are protected by law. The remedy is " to enforce the removal, not to appropriate the property." State vs. Casselar, No. 9468; Fleet vs. Hegeman, 14 Wend., p. 43.

3. A "natural oyster bed" is one not planted by man, and is any shoal " where oysters are to be found—not sparsely or at intervals, but in a mass or stratum in sufficient quantities to be valuable to the public. 104 N. C. Rep., p. 764.

4. The question whether or not lands are " swamp or overflowed lands" is a question of fact properly determinable by the Land Department, whose decisions on matter of fact are, in the absence of fraud or imposition, conclusive and binding on the courts of the country." Syllabus in Heath vs. Wallace, 138 U. S. 573. See also 93 U. S., p. 169; 121 U. S., p. 488; 139 U. S., p. 163.

5. The issuance of patents creates a presumption that the formalities have been complied with. 13 Peters 436; 9 Cranch, 87; 18 Howard 87; 11 U. S. 445.

6. Only those are navigable waters " where the public pass and repass upon them with vessels and boats in the prosecution of useful occupations." " Whether

they are navigable or not depends upon their capacity for substantial use as indicated." 20 Conn. 217; 13 An. 131; 40 An. 246; 16 Am. and Eng. Encyc. of Law, pp. 236, 612.

7.  Owners of land under the Act of 1886, p. 195, have exclusive right to plant oysters in any bay or lake or inlet which "makes into or runs through the land of any person, and is comprised within the limits of his lawful survey. (In the present case the plaintiff is the owner of the bay, etc.)

*E. Howard McCaleb* and *Edwin McCaleb* for Defendants and Appellants:

1.  A mere threat to commit a trespass is not sufficient to justify an injunction. 2 An. 337.

2.  Peremptory exception, founded on law, or arising from the facts of the case, may be filed at any time during the trial; and where the judge *a quo* wrongfully refuses to permit them to be filed and they are annexed to a bill of exceptions, they must be considered and acted upon by the appellate court.

3.  The court will judicially notice the nature and character of shell fish, such as oysters, and that their spawn or spat will attach themselves to shells, rock or other hard substances. Encyc. Britannica, *verbo* Oyster.
    A natural oyster reef, once shown to exist, will be presumed to continue in the same condition. Wharton on Evidence, Vol. 2, Secs. 1294, 1295.

4   The oyster act of 1886 restricts the exclusive right to fish and bed oysters to owners who acquired title prior to its passage. In 40 An. 246, the plaintiff acquired title before, and in this case subsequent to the passage of that act.

5.  The report of the oyster inspector, appointed under Sec. 14 of Act 110 of 1892, and the ordinance of the police jury based thereon, declaring the reef in question to be a natural and not an artificial oyster reef, is conclusive upon the courts. R. C. C. 429; 34 An. 852; Eng. and Am. Encyc. of Law, Vol. 4, p. 376; Eng. and Am. Encyc. of Law, Vol. 15, pp. 1046, 1168; Abbott's Digest of Corp., Supplement, p. 182; Sec. 41, p. 183, No. 50; 115 Mass. 52; 1 Hill. 562; 12 Wheat. 206; 11 Wall. 650; 7 Wall 347; 107 U. S. 402; 113 U. S. 571; 120 U. S. 174; Eng. and Am. Encyc. of Law, Vol. 17, p. 318, Note 1.

6.  The regulation of the right of fishery is subject exclusively to legislative control. Eng. and Am. Encyc. of Law, Vol. 8, p. 34, title Fish and Fisheries, and authorities cited in Notes 1, 2, 3, 4, 5 and 6.

7.  An injunction should not issue to restrain defendants from going upon navigable waters of Bay Conquète, covering the natural reef in controversy. 38 An. 755; 10 Wall. 557; Eng. and Am. Encyc. of Law, Vol. 16, pp. 239 *et seq.;* 28 Wall. 430; 23 Ohio, 527; 108 Mass. 436.

8.  The beds and bottoms of navigable waters are not susceptible of private ownership. The State holds them in trust for the use and enjoyment of its inhabitants, who have the liberty of fishing therein, freed from the obstruction or interference of private parties. Ill. Cent. R. R. Co. vs. Chicago, Sup. Ct. Rep., Vol. 13, No. 5, and cases there cited; 12 La. 324; R. C. C. 450; Act 106 of 1886; Act 110 of 1892.

9.  The United States never owned the bottoms and beds of Bay Conquète. Congress has not and could not grant these bottoms to the State, and the register was prohibited from issuing patents therefor. Sec. 1, Act 106 of 1886.

10. Plaintiff's title, founded on a patent to the beds of Bay Conquète and the natural

Land and Fisheries Co. vs. Gasquet et als.

oyster reefs therein, is absolutely void. 20 An. 433; 25 An. 189; 13 La. 41; 19 La. 336, 510; 12 La. 324; 1 Peters, 340; 13 Peters, 498.

11. Patents for lands prohibited by statute from being sold may be impeached collaterally. 21 Wall. 660; 9 Cranch, 87; 5 Wheat. 293; 11 Wheat. 380; 2 How. 87; 1 Black, 258; 2 Wall. 525; 6 Wall. 160; 142 U. S. 176; 139 U. S. 507.

12. Detendants, residing in a different parish from plaintiff, can claim damages in reconvention arising from the wrongful issuance of the writ of injunction. 6 Peters, 375; 41 An. 1; 4 Rob. 1; 10 An. 98; 16 An. 250; 27 An. 642; 32 An. 464.

13. This court will fix the value of attorney's fees from its own examination of the record. 5 N. S. 299; 3 An. 518; 4 An. 578; 27 An. 467; 21 An. 687; 2 Brad. Ill. Appeals, 533.

The opinion of the court was delivered by

McEnery, J. The plaintiff company alleges that it is the owner of certain sea marsh land, acquired from the State in pursuance of Act No. 86 of 1880, by Robert S. Leovy, and by said company from Leovy on 17th March, 1872. Petitioner further alleges that for the purpose of creating oyster beds and cultivating and selling oysters, the plaintiff company has planted on said lands large quantities of oysters, and that said oyster beds have grown and increased in value since the oysters were planted thereon; that the defendants illegally combined and conspired for the purpose of wilfully slandering petitioner's title to said lands, and have denied that the plaintiff is the owner of the same; that they have taken and removed oysters from said lands, and that pretending to some legal right on said lands, have combined for the purpose of taking plaintiff's oysters planted on the company's property, and have publicly stated that, on 1st September, following the filing of the suit, they would take oysters from the company's beds and sell the same.

The plaintiff company allege damage to the amount of $1000, and pray, also, for an injunction restraining defendants from trespassing upon the lands claimed by the company, and pray to be decreed the legal and true owner of said lands, and be quieted in the title thereto. The injunction issued as prayed for.

The defendant filed peremptory exceptions and answered. Some of the exceptions need no notice, and others may be with propriety referred to the merits. Their defence is that the *locus in quo* where the trespass was said to have been committed was Bay Conquête and Bayou Jacques, arms of the sea, where the tide ebbs and flows, and that they are navigable waters and are not susceptible of private ownership; that said Bays Jacques and Conquête being

natural oyster beds were reserved from sale, to be held by the State for the common benefit of all its citizens for the purpose of fishing and catching oysters.   There was with these special defences a general denial.

The defendants also filed a plea in reconvention for damages.

There was judgment decreeing the plaintiff to be the owner of the sea marsh described in his petition, except the Bay Conquète, which was declared to be the property of the State.

The injunction was dissolved, plaintiff's demand for damages rejected, and defendants' reconventional demand dismissed.

The defendants appealed, in which the plaintiff joins.

Plaintiff objected to all evidence showing that Bay Conquète was not a part of the purchase from Leovy, who acquired from the State, on the ground that the State Register of the Land Office had exclusive power to determine the extent of plaintiff's purchase, and also that defendants could not set up special defences under the general denial.

The defendants do not pretend to question plaintiff's title to the sea marsh, but contend that Bay Conquète, where the trespass was alleged to have been committed, formed no part of plaintiff's lands, as it was public property incapable of private ownership.

They were assuredly entitled to show this as a defence.

In trespass, *quare clausum fregit*, it is always competent for the defence to show that the plaintiff was not the possessor of the *locus in quo*.

The *locus in quo* was alleged by defendants to be the property of the State—declared to be the common property by Act No. 110 of 1892 of all the citizens of the State, to which they had the right to resort for the purpose of taking oysters.   If their contention is well founded the plaintiff could not acquire ownership of the property, nor could it acquire adverse possession to the same.   No one citizen can acquire, except under the regulations made by the State, an adverse possession, so as to exclude another.   This reasoning will apply to both objections.

The whole controversy is in relation to the Bay ¡Conquète, where plaintiff planted oysters, and where defendants are said to have committed the trespass.   It will therefore be unnecessary to pass upon plaintiff's title to the sea marsh claimed by the company, as no question is raised concerning it.   Besides, the record shows that the con-

firmation to this part of plaintiff's property has not been made by the Federal Government to the State of Louisiana.

The testimony shows that Bay Conquète has an average depth of one to two and a half feet, which is the measure of the ebb and flow of the tide. It receives its water through Bay Jacques, and is navigable for luggers of seven tons burden during the highest tide.

But it is land-locked in the interior of the State, and is in fact an inlet bordering on the Gulf of Mexico, and a part of the Gulf of Mexico within the jurisdiction of the State.

R. S. Leovy, from whom plaintiff purchased the land, acquired the same from the State September 28, 1892, after the passage of Act 110 of 1892.

Section 1 of the act provides "that all the beds of the rivers, bayous, creeks and lakes, coves and inlets, bordering on the Gulf of Mexico, and all that part of the Gulf of Mexico within the jurisdiction of this State, shall continue and remain the property of the State of Louisiana, and may be used as a common by all citizens of the State for the purpose of fishing and taking and catching oysters and other shell fish, subject to the reservations and restrictions hereinafter imposed, and no grant or sale or conveyance shall hereafter be made by the Register of the State Land Office to any estate, or interest of the State, in any natural oyster bed or shoal, whether the said bed or shoal shall ebb bare or not; and the citizens of this State shall have the exclusive privilege to fish or take oysters in any natural oyster bed or shoal subject to the restrictions hereinafter imposed."

Section 2 provides "that the rights of the owner or occupant of land on any of the shores or bays, bayous or inlets and lakes, shall extend to ordinary low water mark; but it is not intended thereby to deprive them of the privilege of bedding or planting oysters extended to all citizens of this State under the several sections of this act, and subject to the restrictions hereinafter imposed."

The above act repeals all acts on the same subject matter.

But if it be contended that the patents issued in September, 1893, in pursuance of a previous location of the sea marsh, Act No. 106 of 1866 will apply with greater force, as the second section of said act is in the nature of a proviso, relating only to those who were the owners of land prior to the passage of said act.

The question then presented is one of fact—whether or not Bay

Conquète is a natural oyster reef or bed. There are several reefs in the oay, and the testimony is almost unanimous by witnesses for plaintiff and defendant that these reefs are hard, shell bottoms, ideal locations for the planting and growth of oysters.

For many years it was the resort of the residents of the Buras settlement in Plaquemines parish for a supply of oysters for domestic use.

Many were also taken for the purposes of sale. Defendant's witnesses are unanimous in stating that oysters existed on the reefs in considerable quantities when plaintiffs took possession of the reef on which the company planted its oysters.

Plaintiff's witnesses state that there were few oysters on the reefs, and that they were scattered.

The preponderance of testimony is with the defendants, and even according to plaintiff's witnesses these reefs were not exhausted. There were oysters there in sufficient quantities, if undisturbed, to replenish the reefs.

To protect such natural oyster beds and to prevent their exhaustion, and to provide for the increase and growth of oysters upon them, was the object contemplated by Act No. 110 of 1892, by prohibiting their sale, and regulating their use in the hands of the State.

We agree with the district judge that the testimony shows that the defendants have not slandered plaintiff's title except as to the ownership of Bay Conquète, and that there is also an absence of testimony to show the quantities of oysters taken by defendants or that those taken could be identified as the oysters planted by plaintiff.

Although plaintiff's oysters were planted in a public place, this did not authorize defendants to appropriate them. The proof is wanting as to the quantity and identity of oysters taken, but the inference is that the defendants appropriated some of plaintiff's planting. They are not entitled to damages for the dissolution of the ir junction.

It is therefore ordered, adjudged and decreed that the judgments appealed from be amended so as to dissolve the injunction entirely, restricting the decree to the *locus in quo*, Bay Conquète, which was never sold by the State to R. S. Leovy and by him to plaintiff. In all other respects the judgment is affirmed; plaintiff to pay cost of appeal.

The defendants, without applying for a rehearing in this case, suggest an amendment to the decree so as to apportion the costs in the lower court. It will be necessary to reverse the decree heretofore rendered.

It is therefore ordered, adjudged and decreed that the decree heretofore rendered be set aside, and in lieu thereof the following be entered:

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and plaintiff's demands be rejected and the injunction dissolved. It is further ordered that the reconventional demand of defendants be rejected, plaintiff to pay costs of appeal and in the lower court on principal demand; and defendants to pay costs in lower court on reconventional demand.